UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
JOSE M. MERCADO, JR.,       )
                            )
            Petitioner,     )
      v.                    )      CIVIL ACTION
                            )      NO. 11-10321-JGD
GARY RODEN,                 )
                            )
            Respondent.     )
```

## MEMORANDUM OF DECISION AND ORDER ON PETITION
## FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

December 12, 2016

DEIN, U.S.M.J.

### I. INTRODUCTION

On December 16, 2005, the petitioner, Jose M. Mercado, Jr., was found guilty by a Plymouth Superior Court jury of first-degree murder on a theory of deliberate premeditation, and of possession of a firearm. His conviction was affirmed by the Massachusetts Supreme Judicial Court on March 3, 2010. Commonwealth v. Mercado, 456 Mass. 198, 922 N.E.2d 140 (2010). This matter is presently before the court on Mercado's petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Following a complex procedural history, the sole issues remaining are (1) whether the closure of the courtroom during jury selection violated Mercado's rights under the Sixth Amendment to the United States Constitution; and (2) whether Mercado was deprived of his constitutional right to effective assistance of both trial counsel and appellate counsel because of their failure to object to the closure of the courtroom, or to raise it as an issue following trial. The Respondent contends that these issues

are not timely, and are otherwise not viable.  For the reasons detailed herein, this court finds that the issues Mercado is seeking to raise are time-barred.  Therefore, the habeas petition is DENIED.

## II.  STATEMENT OF FACTS[1]

### The Underlying Crime

Since the events relating to the underlying crime are not relevant to the issues presently before the court, they will be discussed only briefly.  As described by the Massachusetts Supreme Judicial Court ("SJC") in connection with its review of his conviction, the jury could have found that Mercado engaged in an altercation with the victim on June 21, 2002 in the parking lot of a liquor store in Brockton, Massachusetts.  Commonwealth v. Mercado, 456 Mass. 198, 199-200, 922 N.E.2d 140, 143 (2010).  The dispute was a continuation of a running argument about the defendant's failure to pay for a car, which he had bought from the victim and which had broken down.  Id. at 200, 922 N.E.2d at 143.  There were many people in the immediate vicinity, including children and one Nelly Corea, who had set up a chair in the parking lot to braid hair for money.  Id. at 199, 922 N.E.2d at 143.  The argument became heated and the two men were "chest butting" before the defendant left for a period of time. Id. at 200, 922 N.E.2d at 143-44.  When the defendant returned, the victim was having his hair braided by Corea.  Id. at 201, 922 N.E.2d at 144.  The defendant had a gun and he shot the

---

[1] The Respondent has filed a Supplemental Answer ("SA") (Docket No. 13) containing the state court record up until the time of the initial habeas petition.  The state court record relevant to the issues raised by the Petitioner's second motion for a new trial, which are the subject of the issues presently before this court, were filed by the Petitioner at Docket 48.

victim once, fatally, in the chest. Id. The defendant subsequently confessed. Id. at 201-02, 922 N.E.2d at 144-45.

### Procedural Background - State Court Proceedings

Mercado was convicted by a Plymouth County jury on December 16, 2005 of first degree murder on a theory of deliberate premeditation, and of unlawful possession of a firearm. (SA 8). He was sentenced to life imprisonment with a concurrent sentence of one year to one year and one day on the firearms charge. (Id.). Mercado filed a timely appeal to the SJC wherein he raised the following claims: (1) that the trial judge impermissibly restricted his cross-examination of Corea, a Commonwealth witness; (2) that trial counsel failed to object to the trial judge's refusal to instruct the jury on self-defense; (3) that trial counsel failed to object to the judge's instruction on mental impairment; and (4) that the trial judge failed to give a curative instruction concerning the prosecutor's repetitive mocking of the defendant's family during his summation. (SA 21-22). He also requested that the SJC exercise its powers under Mass. Gen. Laws ch. 278, § 33E and either grant him a new trial or reverse the verdict. (SA 22). In an opinion dated March 3, 2010, the SJC affirmed his convictions. Commonwealth v. Mercado, 456 Mass. 198, 922 N.E.2d 140 (2010).

On September 13, 2010, Mercado filed a *pro se* motion for a new trial. (SA 9, 135). Therein he argued to the trial court, *inter alia,* that he had been wrongfully precluded from putting in evidence relating to self-defense; that he had not knowingly, intelligently and voluntarily waived his right to testify since he was being medicated with antipsychotic drugs, and because he had been misled by counsel's wrongful advice and the court's erroneous ruling excluding evidence of the victim's reputation; that he had been wrongfully precluded from

testifying on his own behalf; and that trial and appellate counsel had provided ineffective assistance of counsel for reasons related to those claims. (SA 135-138). The motion for a new trial was denied on November 3, 2010. (SA 156).

On December 9, 2010, Mercado applied to a single justice of the SJC for leave to appeal the denial of his motion for a new trial. (SA 13, 160-196). The single justice concluded that Mercado "has not presented 'a new and substantial question which ought to be determined by the full court.' G.L. c. 278, § 33E." (SA 207). Therefore the application for leave to appeal was denied on February 3, 2011. (SA 13, 207-08).

### The Federal Habeas Petition

Mercado's habeas petition was filed on February 17, 2011. Therein he raised the following seven grounds: (1) the trial judge violated his Sixth Amendment right to confront his accusers by limiting the cross-examination of a Commonwealth witness; (2) the trial judge provided improper jury instructions regarding mental impairment in violation of due process; (3) the trial judge failed to instruct the jury on self-defense in violation of due process; (4) the prosecutor committed misconduct during closing by smirking at family members, and the trial judge failed to give a curative instruction to the jury; (5) the trial judge violated his Sixth Amendment right to confront his accusers by permitting a medical examiner to provide testimony regarding an autopsy report written by another medical examiner; (6) the petitioner was unfairly prevented from raising issues relating to the victim's prior conduct in support of the claim of self-defense, as permitted by Commonwealth v. Adjutant; and (7) the petitioner did not voluntarily and knowingly waive his right to testify and was misled at trial by the judge's instructions. (Docket No. 1).

The Petitioner moved on October 29, 2011 to stay the habeas proceedings so that he could exhaust his state remedies with respect to three new claims.  Specifically he wanted to raise the issue of the failure to present the testimony of three witnesses at trial; the alleged closure of the courtroom during jury voir dire; and counsel's failure to present certain mental health issues and records to the state court.  The Respondent opposed the stay, and this court originally denied the motion to stay on October 4, 2012, finding that the Petitioner had failed to establish good cause for not exhausting these claims.  (Docket No. 21).  However, this court stayed the action for the appointment of counsel to address the merits of the petition.  (Id.).  Counsel was appointed on October 15, 2012.  (Docket No. 22).

### Rulings on the Alleged Closure of the Courtroom

On April 29, 2013, Petitioner, through counsel, filed a second motion for a new trial in Plymouth Superior Court, and the next day filed a motion for reconsideration of this court's denial of the request for a stay.  (Docket Nos. 28, 29).  These pleadings raised the issues presently before the court, namely whether Mercado's constitutional rights were violated due to the closure of the courtroom during jury selection, and whether there was ineffective assistance of trial and appellate counsel in failing to assert those rights.  This court granted the motion for reconsideration, over the Respondent's objection, on August 19, 2013.  (Docket No. 34).  The Petitioner was ordered to submit monthly status reports as to the progress of his second motion for a new trial in the state court.  (Id.).  This court deferred ruling on whether the issue of the closure of the courtroom was timely in the context of Mercado's habeas petition, and asked for briefing on the issue whether the original habeas petition could be amended to include these new claims.  (Id.).

In connection with his motion for a new trial filed with the trial judge, Mercado submitted affidavits from family members which established that they had been barred from the courtroom during jury selection. (See Affidavit of Maria Mercado at ¶¶ 8-9 (Docket No. 48-1 at 20); Affidavit of Luz Perez at ¶¶ 5-6 (Docket No. 48-1 at 22)). In addition, he submitted the Affidavit of Jack M. Atwood, his trial counsel. Attorney Atwood had been practicing law since 1972 and trying cases in Plymouth County Superior Court for over 40 years. (Affidavit of Jack M. Atwood at ¶¶ 1-2 (Docket No. 48-1 at 24)). He attested in relevant part as follows:

> 4.  At the time of the Defendant's trial, it was the consistent practice of the Plymouth County Superior Court in Brockton to close the courtroom to the public during jury selection.
>
> 5.  The practice in the Plymouth County Superior Court in Brockton of closing the courtroom to the public during selection was followed uniformly and without exception from the time I began to try cases there in February of 1973 up until the decision of the Supreme Judicial Court in Commonwealth vs. Cohen (2), 456 Mass. 94 (2010) and slightly thereafter.
>
> . . . .
>
> 8.  Up until the decision of the Supreme Judicial Court in Commonwealth v. Cohen (2), 456 Mass. 94 (2010), I was not aware of the constitutional implications of closing a courtroom during jury selection.

(Docket No. 48-1 at 24-25).[2]

The state trial judge stayed the motion for a new trial pending rulings by the SJC in the then-pending cases of Commonwealth v. Morganti, 467 Mass. 96, 4 N.E.3d 241 (2014), and

---

[2] In Commonwealth v. Cohen, 456 Mass. 94, 921 N.E.2d 906 (2010), the SJC ordered a new trial after finding that the courtroom had been partially closed during jury empanelment in violation of the defendant's Sixth Amendment rights. In recognizing that "[t]he First Amendment implicitly grants the public, including the press, a right of access to court trials[,]" that "[t]he Sixth Amendment expressly grants criminal defendants the right to a public trial[,]" and that "[t]he public trial right applies to jury selection proceedings," the SJC cited a number of cases, including cases dating back decades. Id. at 106-07, 921 N.E.2d at 917-18. Thus, Cohen confirmed longstanding constitutional rights. It did not announce a new holding that closing a courtroom during jury empanelment could result in a violation of a defendant's constitutional rights.

Commonwealth v. Alebord, 467 Mass. 106, 4 N.E.3d 248 (2014). Both of those cases addressed the issue whether the closure of a courtroom during voir dire violated a defendant's Sixth Amendment rights. Coincidentally, Mercado's trial judge was the same judge as in Morganti and Alebord, and his attorney was the same attorney as in Alebord. The trial judge had held evidentiary hearings in those cases, but declined to do so in Mercado's case.

The SJC issued its decisions in Morganti and Alebord on February 12, 2014. The court held that "the defendant waived his rights to a public trial where his experienced trial cousel was aware of the closure and did not object[,]" and that "defense counsel's failure to raise such an objection did not fall measurably below that which might be expected from an ordinary, fallible lawyer[.]" Morganti, 467 Mass. at 97, 4 N.E.3d at 243 (internal quotation marks and citation omitted); accord Alebord, 467 Mass. at 113-14, 4 N.E.3d at 254-56. Thereafter, on July 17, 2014, Mercado's trial judge issued a Memorandum of Decision and Order on Defendant's Renewed Motion for Post-Conviction Relief. (Docket No. 48-1 at 57). The trial judge found that there was "a long-standing and well-known practice by 'established, respected, and experienced defense attorneys,' in the area to acquiesce to the closure of the courtroom during empanelment." (Id. at 60 (internal citation omitted)). She further concluded that Mercado's case was "on all fours with the Supreme Judicial Court's analysis" in Morganti and Alebord. (Id. at 60-61). The trial judge rejected Mercado's argument that cases decided before his trial in 2005 should have put counsel on notice of the right to have an open courtroom during jury empanelment. Rather, she held that "it may be inferred that the Supreme Judicial Court concluded that *no* defense attorney would have been expected to be aware of his/her client's Sixth Amendment right to a public trial until *2007*[,]" when the First Circuit decided Owens v.

United States, 483 F.3d 48 (1st Cir. 2007).³ (Id. at 61 & n.5). Finally, the trial judge rejected Mercado's argument that the recent Supreme Court case of Hinton v. Alabama, 134 S. Ct. 1081 (2014), precluded the court from concluding that counsel was not ineffective just because other lawyers "are similarly ignorant." (Id. at 61). The trial judge held that Hinton was factually inapposite to Mercado's case, and that the Supreme Court had not abrogated the "prevailing professional norms" standard found in ineffective assistance of counsel analysis. (Id. at 61-62).

On August 19, 2014, Mercado filed a petition to a Single Justice of the SJC, asking for leave to appeal the denial of his motion for a new trial. (Docket No. 48 at 1; Docket No. 48-1 at 3). On October 17, 2014, the Single Justice (Spina, J.) denied leave to appeal, finding that "the defendant's application neither presents a new and substantial question warranting determination by the full court nor demonstrates that there is a substantial risk of a miscarriage of justice[.]" (Docket No. 48-1 at 2).

This court then entered a scheduling order requiring the petitioner to file a status report identifying the issues that he intended to pursue. (Docket No. 49). The petitioner filed his

---

³ In Owens, the First Circuit remanded a habeas petition for an evidentiary hearing as to whether and, if so, to what extent a courtroom was closed to the public during jury selection. Owens, 483 F.3d at 61-62. The First Circuit further held that "Owens' counsel may have been ineffective in failing to object to the closure of jury selection to the public[,]" citing Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), and In re Oliver, 333 U.S. 257, 270, 68 S. Ct. 499, 92 L. Ed. 682 (1948), for the proposition that "[t]he courts have been clear on the importance of a public trial to a defendant." Owens, 483 F.3d at 63. This court does not read Owens as setting the first date that counsel should have known of the constitutional right to an open courtroom during jury selection. In fact, on remand, the District Judge in Owens found ineffective assistance of counsel due to counsel's failure to object to the closure of the courtroom during jury selection in 1997. Owens v. United States, 517 F. Supp. 2d 570, 576-77 (D. Mass. 2007). But see Morganti v. Ryan, Civil Action No. 14-cv-11868-IT, 2016 WL 5867409, at *6-7 (D. Mass. Oct. 6, 2016) (SJC ruling that counsel was not ineffective in not objecting to the closure of a courtroom during jury selection was not an unreasonable application of Supreme Court precedent; habeas petition denied). The precise date that counsel should have been aware of the prohibition against closing the courtroom during jury selection does not need to be decided in this case.

status report on December 2, 2014. Therein, he stated that "the only issue which he intends to pursue is the denial of his right to a public trial as a result of the closure of the courtroom during jury selection and the ineffective assistance of his trial counsel and post-conviction attorney in not securing a remedy for this denial in the state court proceedings where they represented him." (Docket No. 50). In addition, he filed a motion for an evidentiary hearing on the issue whether the courtroom was closed. (Docket No. 53). These issues have been fully briefed and argued, and are ripe for review.[4]

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Timeliness of the Closed Courtroom Claim

Mercado filed his habeas petition on February 17, 2011. The parties agree that the petition was timely filed within the 1-year period allowed under the Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"). See 28 U.S.C. § 2244(d)(1) (providing that a prisoner has one year in which to file a habeas petition seeking federal review of a state court conviction). However, the issue of the closure of the courtroom was raised for the first time in a motion to stay filed on October 29, 2011. Mercado argues that the motion to stay "should be construed as a request to amend the petition" under Fed. R. Civ. P. 15(a)(2), which allows amendments by leave of the court. (See Pet. Br. (Docket No. 52) at 25). Such an amendment would be permissible only if the proposed amendment relates back to the original petition, or was

---

[4] This court recognizes that there has been a considerable time lapse between briefing and this decision. Part of the delay was caused by this court's decision to await evolving case law, including a decision on the habeas petition filed in Morganti. That habeas petition was recently denied, and an appeal to the First Circuit is now pending. See Morganti, 2016 WL 5867409.

otherwise filed within the 1-year period under the AEDPA.  For the reasons detailed herein, this court finds that the motion to stay/amend does not relate back to the original petition, and was not filed within the 1-year period.  Therefore, the proposed amendment is untimely and will not be permitted.

### **Relation Back to Original Petition**

Fed. R. Civ. P. 15 applies to habeas proceedings.  <u>Mayle v. Felix</u>, 545 U.S. 644, 655, 125 S. Ct. 2562, 2569, 162 L. Ed. 2d 582 (2005).  Pursuant to Rule 15(c)(1)(B),[5] a proposed "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading[.]"  In the instant case, Mercado does not contend that relation-back is applicable, and such an argument would be unavailing.  "[A]mended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon events which are separate both in time and type from the events upon which the original claims depended."  <u>United States v. Ciampi</u>, 419 F.3d 20, 24 (1st Cir. 2005) (quoting <u>Mayle</u>, 545 U.S. at 657, 125 S. Ct. at 2571).  Since the facts relating to the closure of the courtroom are distinct from the other claims of error in Mercado's original habeas petition, the proposed new claim does not relate back.  See <u>Silva v. Roden</u>, 951 F. Supp. 2d 222, 226 (D. Mass. 2013) (facts relating to closure of courtroom were unrelated to other claims raised in previously filed habeas petition and, therefore, did not relate back to original petition).

---

[5]  Prior to the 2007 renumbering of the Rules, this Rule was formerly numbered 15(c)(2).

**Calculation of 1-year Period**

As noted above, under the AEDPA, a prisoner has one year in which to file a habeas petition seeking federal review of a state court conviction. See 28 U.S.C. § 2244(d)(1). Pursuant to 28 U.S.C. § 2244(d)(1)(A), the 1-year period for filing an application for a writ of habeas corpus begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]"[6] The Supreme Court has held that the conviction is final when the "availability of direct appeal to the state courts and to [the U.S. Supreme Court] has been exhausted." Jimenez v. Quarterman, 555 U.S. 113, 119, 129 S. Ct. 681, 685, 172 L. Ed. 2d 475 (2009) (internal quotation marks and citations omitted). If no direct review is sought with the Supreme Court, "the conviction becomes final when 'the time for filing a certiorari petition expires.'" Id. (quoting Clay v. United States, 537 U.S. 522, 527, 123 S. Ct. 1072, 1076, 155 L. Ed. 2d 88 (2003)). There is a ninety day period for seeking certiorari. U.S. Sup. Ct. R. 13(1) ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."); Neverson v. Farquharson, 366 F.3d 32, 36 (1st Cir. 2004). The critical issue in dispute in this case is whether, as Respondent contends, the 90 day period began when the SJC affirmed Mercado's conviction on March 3, 2010, or, as Mercado argues, it began 28 days thereafter, when the rescript was allegedly entered on the Superior Court's docket. If the Respondent is correct, the proposed amendment was untimely, while under the Petitioner's calculation the

---

[6] 28 U.S.C. § 2244(d)(1) provides that the statute of limitations begins to run from the latest of four specified dates. The above-quoted provision is the only one relied on by Mercado.

[11]

filing was made within 1 year.[7]  For the reasons detailed herein, this court finds that the proposed amendment is time-barred.

Mercado is relying on Mass. R. App. P. 23 to argue that the 90 day period for petitioning for certiorari did not begin to run until 28 days after the SJC decision affirming his conviction. Appellate Rule 23 provides as follows:

> The clerk of the appellate court shall mail to all parties a copy of the rescript and the opinion, if one was written. **The rescript of the court shall issue to the lower court twenty-eight days after the date of the rescript** unless the time is shortened or enlarged by order.  The timely filing of a petition for rehearing or of an application for further appellate review will stay the rescript until disposition of the petition or application unless otherwise ordered by the appellate court.  If the petition or application is denied, the rescript shall issue forthwith unless the appellate court or a single justice orders otherwise.  If an application for further appellate review is granted the rescript of the Appeals Court shall not issue to the lower court.

(Emphasis added).  "Rescript" is defined as "the order, direction, or mandate of the appellate court disposing of the appeal."  Mass. R. App. P. 1(c).  As the SJC has explained:

> As rule 23 indicates, the reason for the twenty-eight day delay in issuance of the rescript to the lower court is to accommodate a party's twenty-day right to seek further appellate review of the case by [the SJC] pursuant to G.L. c. 211A, § 11, and rule 27.1.  If the FAR application is timely filed (i.e., within twenty days), the Appeals Court's rescript is stayed until [the SJC] rules on the application.  If [the SJC denies] the FAR application, the Appeals Court's rescript then issues forthwith to the lower court[.]

Foxworth v. St. Amand, 457 Mass. 200, 205-06, 929 N.E.2d 286, 290 (2010) (footnotes omitted).

"The gist of these rules," according to the SJC, is that the rescript issued by either the Appeals

---

[7] As described below, calculation of the 1 year period takes into account a 143-day period of time, from September 13, 2010 to February 3, 2011, when the limitations period was tolled.

Court or the SJC to the lower court "signals the end of the direct review process for the case." Id. at 206, 929 N.E.2d at 291.

While Mercado is correct that the issuance of the rescript to the lower court may "end the direct review process for the case," that date is irrelevant to the date by which a petition for certiorari to the U.S. Supreme Court must be filed. Supreme Court Rule 13(3) expressly provides that

> The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, **and not from the issuance date of the mandate** (or its equivalent under local practice).

(Emphasis added).[8] Under this Rule, "[t]he order or judgment of the highest state court is controlling as to the running of the time even though under the state practice (as in New York and Massachusetts) the actual judgment is that entered by an inferior state court on remand, remittitur, or rescript." Stephen M. Shapiro, et al., Supreme Court Practice § 6.2 at 393 (10th Ed. 2013). Thus, where, as here, the trial court mandate or judgment is not entered until "some time after the entry of the critical appellate court judgment as to which review is sought[,] . . . [i]t is the date of this appellate court judgment that alone is relevant to the calculation of the 90 days allowed for petitioning for certiorari." Id. at 392.

The arguments proffered by Mercado were rejected by the Supreme Court in Cole v. Violette, 319 U.S. 581, 63 S. Ct. 1204, 87 L. Ed. 1599 (1943). In that case, the Court expressly

---

[8] Rule 13(3) provides further: "But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties (whether or not they requested rehearing or joined in the petition for rehearing) runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment." Here, however, Mercado took no steps to challenge the SJC's decision affirming his conviction.

[13]

recognized that "Massachusetts local practice regards the decree entered by the Superior Court on the rescript, rather than the order of the Supreme Judicial Court contained in the rescript, as the 'final decree' in the case." Id. at 582, 63 S. Ct. at 1205.  Nevertheless, the Supreme Court held that since the SJC's decision "finally disposed of all the issues in the case, leaving nothing to be done but the ministerial act of entering judgment in the trial court[,]" it was the date of the SJC decision that started the period in which the petition for certiorari needed to be filed. Id.  See also Dep't of Banking, State of Neb. v. Pink, 317 U.S. 264, 267-68, 63 S. Ct. 233, 235, 87 L. Ed. 254 (1942) (the period for filing petition starts on date of New York Court of Appeals judgment, not "from the judgment subsequently entered by the lower court upon the Court of Appeals' remittitur."  "For the purpose of the finality which is prerequisite to a review in this Court, the test is not whether under local rules of practice the judgment is denominated final[.]")  Thus, the 90 day period in Mercado's case started when the SJC affirmed his conviction, and not 28 days thereafter.

Mercado further relies on the SJC decision in Foxworth v. St. Amand, but that decision does not assist him here.  In Foxworth, the First Circuit Court of Appeals certified a question to the SJC as to when a state defendant's conviction had become final.  That date was needed to determine the status of the "clearly established Federal law" that was to be applied to his habeas petition.  Foxworth, 457 Mass. at 203, 929 N.E. 2d at 288-89.  The choices were between "the date the Massachusetts Appeals Court's rescript issued, concluding that court's consideration of Foxworth's direct appeal" or the date the SJC denied his application for further appellate review, which the SJC had permitted him to file late, after the rescript had issued.  Id. at 204, 929 N.E.2d at 289.  The SJC concluded that "the final judgment reflected in the entry of

the rescript on the trial court's docket remain[ed] the final judgment[,]" and that the fact that the SJC had allowed Foxworth to seek further appellate review in an untimely manner did not negate the finality of the Appeals Court rescript.  Id. at 207, 929 N.E.2d at 291.

As is clear, Foxworth did not address the issue before this court, namely when the time for filing a petition for certiorari commenced.  In particular, the court did not address the Supreme Court's own Rules that govern the time in which a petition for certiorari must be filed.  Moreover, if anything, Foxworth is consistent with the conclusion that the time for filing a petition for certiorari begins when the SJC issues its decision.  As the Foxworth Court noted, under Appellate Rule 23, the time for filing a motion seeking further appellate review begins to run with the appellate court's decision.  The timing of the rescript is dependent on what actions a defendant takes in response to the appellate court's decision.  Id. at 205-06, 929 N.E.2d at 290-91.  Similarly, in the instant case the time for filing a petition seeking a writ of certiorari began to run with the SJC's decision.  The timing of the subsequent rescript to the trial court was dependent on the action (or lack thereof) taken by Mercado to further challenge the SJC decision.

Finally, Mercado argues that it is significant that the SJC in Foxworth was asked to determine whether the relevant date for determining what law applied was the date of the rescript from the Appeals Court, and not the date of the decision of the Appeals Court.  However, it makes sense that the time for determining the applicable law for a case would be at the end of any possible review period.  Thus, Mercado could have raised issues concerning the applicable law in connection with an application for further appellate review, which would

[15]

normally have been filed before the rescript issued.  There is no comparable need to delay the period for filing a petition for certiorari.[9]

For these reasons, the time for filing the petition for a writ of certiorari began on March 4, 2010, the day after the SJC affirmed Mercado's conviction,[10] and ended 90 days later, on June 1, 2010.  As detailed in the next section, the motion to amend the habeas petition was filed more than one year after that.

### Tolling

In calculating the 1 year period, the AEDPA provides for tolling of certain periods.  Specifically of relevance to the instant case, pursuant to 28 U.S.C. § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  "[T]he phrase 'collateral review' in § 2244(d)(2) means judicial review of a judgment in a proceeding that is not part of direct review."  Wall v. Kholi, 562 U.S. 545, 547, 131 S. Ct. 1278, 1282, 179 L. Ed. 2d 252 (2011).  Moreover, "an application for state post-conviction relief is 'pending' –and, thus, the statute of limitations is tolled – not only when the application 'actually is being considered by the trial or appellate

---

[9] The unpublished decision of Nesbitt v. St. Amand, Civil Action No. 09-10615-DPW, 2011 WL 1232376 (D. Mass. Mar. 30, 2011), does not compel a different result.  There the court dismissed a habeas petition for containing unexhausted claims.  The judge estimated the time that the defendant would have to file another petition after his claims were exhausted in state court, emphasizing that the calculations were "not definitive and cannot be relied upon[.]"  Id. at n.1.  The judge suggested that the period for filing a writ of certiorari with the Supreme Court would begin to run "when the rescript of the appellate decision is entered on the trial court's docket."  Id. (citing Foxworth, 457 Mass. at 206-07, 929 N.E.2d at 291).  Not only is this reference *dicta*, but the trial judge also did not consider the significance of Supreme Court Rule 13(3) or the cases cited above.

[10] Under Supreme Court Rule 30(1), calculation of the 90-day period for filing a petition for a writ of certiorari does not include the day the judgment actually entered, but begins on the following day.

court, but also during the "gap" between the trial court's initial disposition and the petitioner's timely filing of a petition for review at the next level.'" Nowaczyk v. Warden, N.H. State Prison, 299 F.3d 69, 71 (1st Cir. 2002) (quoting Currie v. Matesanz, 281 F.3d 261, 266 (1st Cir.2002)).

For present purposes, the parties agree that the limitations period was tolled for the 143 days from September 13, 2010, the date Mercado filed a motion for a new trial in Plymouth Superior Court, to February 3, 2011, the date of denial of his ALOFAR by a Single Justice of the SJC. (Pet. Br. (Docket No. 52) at 33; Resp. Br. (Docket No. 61) at 17). Therefore, the period for filing his habeas petition is calculated as follows:

| | |
|---|---|
| June 1, 2010 – September 12, 2010 | 104 days |
| February 4, 2011 – October 22, 2011 | <u>261 days</u> |
| | 365 days |

Since October 22, 2011 was a Saturday, the due date for Mercado's habeas petition was Monday, October 24, 2011, at the latest. See Fed. R. Civ. P. 6(a)(3). Since Mercado's motion to stay/amend was not dated (and presumably placed in the prison mailbox) until October 29, 2011, it was not timely. See Donovan v. Maine, 276 F.3d 87, 89-90 (1st Cir. 2002) (habeas petition filed 12 days late was time-barred).

### B. Equitable Tolling

The doctrine of "equitable tolling" is applicable to habeas petitions, but it does not save Mercado's petition in the instant case. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96, 111 S. Ct. 453, 457-58, 112 L. Ed. 2d 435 (1990)). Equitable tolling is an

"extraordinary" remedy and applies only where "circumstances beyond the litigant's control" caused the delay. Cordle v. Guarino, 428 F.3d 46, 48 (1st Cir. 2005) (citations omitted). "In the usual case, a court may deny a request for equitable tolling unless the proponent shows that he was actively misled or prevented 'in some extraordinary way from asserting his rights.' In short, equitable tolling is strong medicine, not profligately to be dispensed." Delaney v. Matesanz, 264 F.3d 7, 15 (1st Cir. 2001) (quoting United States v. Patterson, 211 F.3d 927, 930-31 (5th Cir. 2000). "Petitioner's incarceration or his lack of legal training does not justify equitable tolling." Donovan v. Martin, Civil Case No. 14-cv-10182-RGS, 2015 WL 84676, at *9 (D. Mass. Jan. 7, 2015) (quoting Holmes v. Spencer, 685 F.3d 51, 62-63 (1st Cir. 2012). Similarly, "simply receiving bad advice from counsel, 'regardless of its level of alleged incompetence,' does not stand in the way and prevent a timely filing." Id. at *7. Mercado has not met his burden of establishing that this is the "extraordinary" case in which equitable tolling should apply.

Mercado filed his habeas petition in February 2011. As detailed more fully above, by that time, it was clear that the closure of a courtroom during jury selection could constitute a violation of a defendant's Sixth Amendment rights. See, e.g., Presley v. Georgia, 558 U.S. 209, 212, 130 S. Ct. 721, 723, 175 L. Ed. 2d 675 (2010) (the "right to a public trial in criminal cases extends to the jury selection phase of trial, and in particular the *voir dire* of prospective jurors."); Commonwealth v. Cohen, 456 Mass. 94, 106-07, 921 N.E.2d 906, 917-18 (2010); Owens v. United States, 483 F.3d 48, 62-63 (1st Cir. 2007). The facts relating to the closure of the courtroom were easily ascertainable, and presumably known to Mercado since his trial in 2005. No one prevented Mercado from raising the issue of a closed courtroom in a timely manner. The doctrine of equitable tolling does not apply.

## IV. <u>CONCLUSION</u>

For the reasons discussed herein, the issues relating to the closure of the courtroom during jury selection are time-barred. Mercado's Petition for a Writ of Habeas Corpus is DENIED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge
